IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUE ROSANNE TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND, and DAVID LARSON,<br><br>Defendants.<br>_____ / | No. C 06-05169 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO HAVE AVERMENTS DEEMED ADMISSIONS, AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**INTRODUCTION**

In this civil rights action, plaintiff moves to have averments in defendant David Larson's answer deemed admissions and moves for partial summary judgment as to her claims against Larson. Plaintiff has shown that some of the facts alleged in complaint were within defendant's sphere of knowledge, thus it was inappropriate for Larson to allege in his answer that he lacked sufficient information. For plaintiff's other allegations, those matters were not clearly within Larson's sphere of his knowledge, so denial for lack of information was consistent with his obligations under Rule 11(b). As to plaintiff's motion for partial summary judgment, plaintiff has failed to eliminate all triable issues of fact as to her claims for malicious prosecution under 42 U.S.C. 1983. Accordingly, plaintiff's motion to have averments deemed admissions is **GRANTED IN PART AND DENIED IN PART**, and plaintiff's motion for partial summary judgment is **DENIED**.

## STATEMENT

This case began as an ordinary fender bender and ended as a nightmare for plaintiff, according to the complaint. On April 5, 2004, plaintiff Sue Rosanne Taylor, a 57-year-old woman, was involved in a minor, non-injury car accident in Oakland, California (Chanin Decl. Exh. 2, ¶ 2). She declares that she pulled her vehicle over and attempted to exchange information with the other driver involved, Salim Zahraoui (*id*. at ¶ 3). Taylor was unable to get information from Zahraoui, so she called the City of Oakland police department using her cellular phone (*id*. at ¶ 6). When calling the police dispatcher, Taylor reported that she had been in a minor traffic accident and gave the dispatcher her cell phone number (*id*. at Exh. 2, ¶¶ 5–8; Exh. 3).

Taylor declared that there was a delay in the arrival of the Oakland police during which time Zahraoui became increasingly hostile. She made several calls to the police department. Because Taylor reported that Zahraoui had been threatening and failed to exchange information, the dispatcher advised Taylor to stay in her car, lock the doors, and wait for the police to arrive (*id*. at Exh. 3, 9–10). In her fifth call, Taylor asked the dispatcher if she could leave because she did not feel safe and had not gotten Zahraoui's information. The dispatcher advised her as follows (*id*. at 11–15):

| | |
|---|---|
| Taylor: | Do, uh, you have an officer on the way to 29th and (inaudible), I've got a man who hit me as I was trying to cross Harrison. |
| Dispatcher: | 29th and Harrison? |
| Taylor: | He refuses . . . |
| Dispatcher: | Hello . . . |
| Taylor: | Yeah, he refuses to give identification or insurance information. (inaudible). Are you there? |
| Dispatcher: | Yes. |
| Taylor: | Yeah. |
| Dispatch: | We have the call. We're trying to get an extra officer available; it's real busy right now, so we're trying to get a unit. |

2

| | | |
|---|---|---|
| Taylor: | | Yeah, see I'm not safe sitting here with him close by, locked in my car or not. He's a real loose cannon; trying to elicit neighbors to make witness reports and there were no witnesses. He works for a delivery service. He's had somebody come from his company and pick up things and drive away with them. I, I just feel real unsafe. |

       \*       \*       \*

Taylor: Alright, what damage do I do myself by getting my Triple A on the phone and getting out of here. I took some photographs of the location of his car, of my car, of him because he refuses to identify himself. I got a description of the man who picked up his courier materials. He wouldn't give me his name because this man just came at us and shouted "Don't tell her anything." Um.

Dispatch: Well.

Taylor: Can you, can you advise me on that?

Dispatch: Ma'am, if you don't feel safe, you have to use your judgment on that. If you don't feel safe then you might want to leave, is, as uh you go with the information you have, but uh . . .

Taylor: Okay, I don't violate any law by getting out of here, do I?

Dispatch: Well, well you're supposed to exchange information. If under the circumstances, he's not willing to exchange information . . .

Taylor: Uh, huh . . .

Dispatch: . . . then if you leave you can always, always make a report at a later time.

Taylor: Oh, I could come down to you and make the report, couldn't I?

Dispatch: Yeah, yeah . . . police report is not required by law unless there is a crime or injury involved.

       \*       \*       \*

Dispatch: So, are you gonna wait, or what?

Taylor: Well, I don't know. I'm going to determine whether I can move my car at all. I don't know that.

Dispatch: Yeah, if you, if you leave, then you call us back, Okay?

| | | |
|---|---|---|
| Taylor: | | Oh, I will do that, sure. |

Taylor left, and then called the dispatcher again (*id*. at 16–17):

| | | |
|---|---|---|
| Taylor: | | Hi, I just spoke to an officer, I uh, was hit on Harrison Street, and I told him I felt very unsafe. Was gonna try to get the man to identify himself and he refused to and I have now left the scene. And he just asked me to call you back. |
| Dispatch: | | You left the scene? |
| Taylor: | | Yes, he told me it was alright. There was no injury. |
| Dispatch: | | Okay, but you're gonna have to go to the Traffic Division to make a report then. We don't send officers out. |
| Taylor: | | Right. |
| Dispatch: | | Ok, do you know where the police station is at? |
| Taylor: | | I do. Yeah, now I'm gonna get home and address the damage to my car first. So, is that alright with you? |
| Dispatch: | | Yeah, that's fine. I mean once you've left the scene you have to go to the Traffic Division. I mean, it could be a week later, a month later — but, by law you don't have to have a report. But um . . . |
| Taylor: | | Well . . . well, I think we're going to want one. |
| Dispatch: | | Yeah, if your insurance requires it, you could go down the Traffic Division . . . and make a report in person. |

According to Larson's supplemental report, he arrived at the scene after Taylor had left (Chanin Decl. Exh. 5). Thereafter, Larson issued a broadcast that Taylor had been engaged in a hit and run (*ibid*.). He then headed toward Taylor's residence. While he was en route, Oakland Police Officer Hoyle stopped Taylor and physically detained her in front of her residence (*id*. at Exh. 2, ¶¶ 13–14). According to Larson's supplemental police report, Taylor informed Hoyle that she had been told by the police dispatcher that she could leave the scene of the accident (*id*. at Exh. 5). Plaintiff declared that she sustained injuries to her shoulder, wrist and arm during her arrest (*id*. at Exh. 2, ¶ 15).

4

Taylor was then placed under arrest by Officer Hoyle and Sergeant Larson and taken to Alameda County Medical Center for treatment for her injuries (*id*. at ¶ 20). The officers then took her to the City of Oakland jail, and she was booked and placed in a cell. She was released the next day after she posted bond (*id*. at ¶ 20).

According to his report, Officer Hoyle ultimately did not decide to issue a citation to plaintiff on the day of the incident (*id*. at Exh. 8). Larson then wrote a supplemental report in which he described listening to the tapes of the phone calls between Taylor and the dispatcher, determined they were inconclusive, and ordered that Taylor be arrested for resisting arrest, but not for leaving the scene of a car accident (*id*. at Exh. 5). Taylor later asked for tapes of the conversations between Taylor and police dispatch. The supplemental report that Larson made later recommended prosecuting Taylor for leaving the scene of an accident (*ibid*.). William Valladon, an employee of the Oakland Police Department, testified in his deposition that he recalled that Larson had asked for records of all of the phone calls between Taylor and police dispatch, but that he did not recall for certain whether or not he gave tapes of all of the conversations to Larson (Treppa Decl. Exh. 3, 69:1–23).

Taylor was criminally prosecuted for leaving the scene of an accident, and the case was pending for nearly two years. On May 24, 2006, Taylor's motion for acquittal was granted at the close of evidence in her criminal trial (*id*. at Exh. 9).

This action was filed on August 24, 2006. Plaintiff alleges claims for violation of her civil rights under 42 U.S.C. 1983 against Larson and the City of Oakland and a *Monell* claim against the City of Oakland. As he did in the prior criminal case, defendant Larson has asserted his right against self-incrimination under the Fifth Amendment. Plaintiff filed this motion to have averments in Larson's answer deemed admissions and for partial summary judgment as to the claim against Larson on July 19, 2007. Trial in this action is set for December 3, 2007.

**ANALYSIS**

Plaintiff moves to have certain of defendant Larson's averments in his answer deemed admissions. Plaintiff also moves for partial summary judgment on her claims against defendant Larson. This motion does not address any of Taylor's claims against the City of Oakland.

5

**1.    MOTION TO HAVE AVERMENTS IN ANSWER DEEMED ADMISSIONS.**

Under Rule 8(b), a party must answer the allegations in the complaint. "When a pleader intends in good faith to deny only a part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder." Fed. R. Civ. P. 8(b). Denials of allegations are subject to the obligations set forth in Rule 11. Specifically, "[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the denials of factual contentions are warranted on the evidence or if specifically so identified, are reasonable based on a lack of information or belief." Fed. R. Civ. P. 11(b)(4).

"An answer asserting want of knowledge sufficient to form a belief as to the truth of facts alleged in a complaint does not serve as a denial if the assertion of ignorance is obviously a sham. In such circumstances the facts alleged in the complaint stand admitted." *Harvey Aluminum (Inc.) v. NLRB*, 335 F.2d 749, 757 (9th Cir. 1964) (holding that a company's denial of knowledge of common ownership and control was clearly a sham, so the allegation was deemed admitted). Grant of a motion to consider an averment to be an admission is a severe sanction that is best granted after a significant amount of discovery. *Gallagher v. England*, 2005 WL 3299509, *5 (E.D. Cal. 2005) (Ishii, J.).

Plaintiff seeks to have paragraphs 17–19, and 21–25 of Larson's answer to be deemed admissions because the defendant has not answered truthfully. At the hearing, plaintiff's counsel withdrew the motion as to paragraph 35, which Larson had denied in his answer. In all of these disputed paragraphs, defendant alleges that he lacks sufficient knowledge. Plaintiff argues that the facts alleged in these paragraphs were within Larson's sphere of knowledge, so he cannot plead that he lacks knowledge consistent with his obligations under Rule 11.

Turning to plaintiff's specific allegations, paragraph 17 alleged that Larson arrived on the scene of the accident after plaintiff departed, that he was a sergeant at the time and the senior officer on the scene. Larson admitted in his answer that he was a sergeant and denied the

rest of the allegations for lack of information. Here, after discovery, it is quite obvious that there can be no question that he was on the scene after plaintiff departed, and that he was the senior officer on the scene. In his supplemental report, Larson wrote that he went to the scene to assist Officer A. Coaston, another officer. Once there, he reported that Zahraoui told him that the other driver, Taylor, had left three to four minutes earlier (Chanin Decl. Exh. 5). Thus, plaintiff's motion is granted as to this paragraph.

In paragraphs 18 and 19, Taylor alleges that Larson did not make an adequate investigation of the situation, ordered that Taylor should be arrested, and that as a result, Officer Hoyle arrested Taylor outside of her home. These are not allegations that should be deemed admitted particularly where they address the subjective motivations of Officer Hoyle. Larson's denial is not clearly a sham, so plaintiff's motion is denied as to these allegations.

Paragraphs 21 through 25 address what happened during Taylor's arrest. Taylor alleges that she was subjected to excessive force, that she had been specifically told that she could leave the scene by the police dispatcher, that plaintiff was exercising her First Amendment rights by complaining about the officer's use of excessive force. She also alleged that Larson failed to prevent Officer Hoyle from using excessive force against her, and that Larson had admitted that there was a "problem" with the facts surrounding Taylor's arrest. Again, these are not allegations that were absolutely within Larson's sphere of knowledge, particularly since they go to what Officer Hoyle did and believed. Plaintiff has not shown that Larson's answers were clearly a sham. Accordingly, the remedy of deeming these allegations admissions is not warranted. Plaintiff's motion to have averments deemed admissions is **GRANTED IN PART AND DENIED IN PART**. The allegations in paragraph 17 are deemed admitted.

### 2. MOTION FOR PARTIAL SUMMARY JUDGMENT.

Summary judgment should be granted where the pleadings, discovery, and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004).

7

1    Once the moving party has met its initial burden, the nonmoving party must "designate specific
2    facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24
3    (1986). "If the moving party shows the absence of a genuine issue of material fact, the non-
4    moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine
5    issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citation
6    omitted).

7    Plaintiff contends that there are no triable issues of fact remaining in her claims for
8    malicious prosecution against defendant Larson. To prevail on a claim for malicious
9    prosecution, the plaintiff must show that the defendant caused her to be prosecuted with malice
10   and without probable case, and that he did so for the purpose of denying the plaintiff a specific
11   constitutional right. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

### A.    Probable Cause.

13   Plaintiff first presents evidence that there was no triable issue of fact that she was
14   prosecuted without probable cause. Probable cause requires a fair probability or substantial
15   chance of criminal activity, as determined by the totality of the circumstances known to the
16   officer at the time. *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002). Here,
17   plaintiff presents evidence that Larson admitted to Hoyle that there was a "problem" with
18   arresting Taylor for leaving the scene of the accident, and that the tapes of the conversations
19   between Taylor and the police dispatcher show conclusively that Taylor was told that she could
20   leave the scene of the accident without running afoul of the law. Specifically, Taylor told the
21   dispatcher that she intended to leave the scene of the accident, the dispatcher told her that she
22   could later fill out an accident report at the station, and that Taylor should call dispatch after she
23   had left the scene. Taylor did so.

24   Defendant contends that there is a triable issue of fact as to whether he received all of
25   the tapes of Taylor's calls to the police dispatcher, and thus whether he had all of the relevant
26   information available to him in making his decision to press charges. At best, Valladon, the
27   employee responsible for turning over the recordings, testified that he did not recall whether or
28   not he gave all of the relevant tapes to Larson. Moreover, in Larson's supplemental report, he

8

summarizes the portions of the tapes in which the dispatcher and Taylor discuss whether or not she should leave. His report stated that Taylor did not call the dispatcher back after she left the scene. He went on to conclude that she had already formed the intent to leave the scene, that she did not sound like she really felt in danger because of the other driver, and that she wanted to leave the scene because she feared being blamed for the accident. Even though Taylor has presented convincing evidence that she did call the police back after she left the scene of the accident, Larson's report makes no mention of it. Viewing the facts in the light most favorable to defendant, and based on the information he had at the time, a reasonable trier of fact could conclude that Larson did not know Taylor had called police dispatch after leaving the scene of the accident.

Larson also argues that Zahraoui's statements the *Taylor* was the one who refused to exchange information create a triable issue of fact. Taylor declared that Zahraoui refused to exchange information with her, thus their two versions of the story conflict. Plaintiff protests that those statements are hearsay, but they are relevant to determining what Taylor believed when he made his report. Accordingly, viewing the facts in the light most favorable to Larson, a reasonable trier of fact could conclude that he had probable cause to recommend that Taylor be brought up on charges. This is not to say that probable cause did exist; in fact, a jury could find as well that Larson acted in bad faith with no probable cause. That, however, is for the jury to decide.

Defendant also argues that the ultimate decision to prosecute Taylor was made by the prosecutor, not Larson himself. Liability for selective and malicious prosecution is not limited to prosecutors; others who have wrongfully caused charges to be filed may be held liable. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002). A defendant may be held liable if the plaintiff can show that the defendant improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct actively instrumental in causing the initiation of legal proceedings without probable cause. *Awabdy*, 368 F.3d at 1067. Here, Larson concluded in his report that there was probable cause to bring charges for leaving the

9

scene of an accident against Taylor. Even though Larson may not have made the ultimate decision to charge Taylor with leaving the scene of an accident, he still may be held liable for malicious prosecution.

### B.     Malice.

Plaintiff must next show that Larson caused her to be prosecuted with malice. Merely showing that a plaintiff was ultimately acquitted is not sufficient to prove a claim of malicious prosecution; evidence of malice or intent is required. *See Poppell v. City of San Diego*, 149 F.3d 951, 962–65 (9th Cir. 1998); *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc). Neither side disputes that Taylor was ultimately acquitted of leaving the scene of the accident.

Taylor contends that Larson listened to all of the calls that she had made to the dispatcher, including the one where she called dispatch after she had left the scene of the accident. His supplemental report specifically stated that Taylor did not call the police back after leaving the scene of the accident (Chanin Decl. Exh. 5). Plaintiff contends that this means that Larson deliberately omitted mention of that call. He then filed a false report in order to bring her up on charges of leaving the scene of the accident. This order has already concluded that a reasonable trier of fact could find that Larson had probable cause to recommend that charges be brought against Taylor. Simply assuming that Larson filed a false report and deliberately omitted Taylor's last call is too much of a logical leap. Viewing the facts in the light most favorable to defendant, as must be done, it is possible that a reasonable jury could conclude that Larson did not receive the tape of that phone call or that he otherwise neglected to note Taylor's final call to the police dispatch. Accordingly, plaintiff has not eliminated all triable issues of fact as to whether defendant acted with malice.

### C.     Purpose of Denying a Constitutional Right.

Plaintiff argues that Larson undertook to have her prosecuted for the purpose of denying her constitutional rights under the First, Fourth, and Fourteenth Amendments. Plaintiff presents little to no evidence that Larson's actions were done with the purpose of denying her rights.

10

1   Indeed, her motion seems to merely recite some of the elements required without showing
2   evidence to support her claim.

3         To show that defendant intended to deprive her of her First Amendment rights, plaintiff
4   must show that her protected speech was a motivating factor in defendant's wrongful conduct.
5   *Awabdy*, 368 F.3d at 1071.  A First Amendment malicious prosecution claim must be based on
6   something more than a speculative chilling of speech based on legitimate and generalized law
7   enforcement initiatives.  A showing of specific, targeted police surveillance and action intended
8   to suppress protected speech is sufficient.  *Mendocino Environmental Ctr. v. Mendocino*
9   *County*, 14 F.3d 457, 464 (9th Cir. 1994).  Taylor's showing falls far short of that.  She merely
10  declared that she was exercising her First Amendment rights in protesting against Hoyle and
11  Larson's alleged use of excessive force against her.  Taylor presents no evidence that her speech
12  was protected, or that it motivated Larson to prosecute her.

13        As to plaintiff's theory under the Fourth Amendment, a plaintiff must establish that she
14  was subjected to a seizure, including an arrest or an incarceration.  *Karam v. City of Burbank*,
15  352 F.3d 1188, 1193 (9th Cir. 2003).  Neither side disputes that Taylor was arrested.  She
16  posted bond and was released, however, before she was charged with leaving the scene of an
17  accident.  Larson's allegedly filing a false report *after* Taylor was arrested and released is the
18  heart of her claim.  Plaintiff presented no evidence that she was arrested or incarcerated after
19  Larson filed his supplemental report.  Here, plaintiff simply has not met her burden of showing
20  that Larson caused her to be prosecuted for the purpose of depriving her of her Fourth
21  Amendment rights to be free from unreasonable seizure.

22        Malicious prosecution claims under the Fourteenth Amendment are rooted in principles
23  of equal protection.  *United States v. Armstrong*, 517 U.S. 456, 469 (1996).  To prevail on a
24  malicious prosecution claim, a plaintiff must prove that members of an identifiable class were
25  singled out for enforcement of the law while nonmembers of the class were not prosecuted.  *Id*.
26  at 465 ("The claimant must demonstrate that the . . . prosecutorial policy had a discriminatory
27  effect and that it was motivated by a discriminatory purpose.").  In other words, the decision
28  whether to prosecute may not be "deliberately based upon an unjustifiable standard such as

11

race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456 (1962). On the other hand, "[m]ere selectivity in prosecution creates no constitutional problem." United States v. Steele, 461 F.2d 1148, 1151 (9th Cir. 1972). Here, plaintiff fails to identify both a protected class on the basis of which she was prosecuted in contravention of equal protection, and similarly situated persons who were not prosecuted. Taylor seems to argue that Zahraoui was similarly situated to plaintiff, but he was never cited for leaving the scene of the accident. Viewing the facts in the light most favorable to defendant, Taylor has not shown that she was prosecuted in violation of equal protection principles. Accordingly, plaintiff has failed to eliminate all triable issues of fact as to whether Larson caused Taylor to be prosecuted in order to deprive her of an identifiable constitutional right. Plaintiffs' motion for partial summary judgment is **DENIED**.

## CONCLUSION

For all of the above-stated reasons, plaintiff's motion to have averments deemed admission is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's motion for partial summary judgment as to her claims against Larson for malicious prosecution is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 7, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12